UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HASSAN ZEIN,

    Defendant.
_____/

Case No. 09-20237

Hon. Victoria A. Roberts

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NATHAN MADISON,

    Defendant.
_____/

Case No. 09-20145

Hon. Victoria A. Roberts

**ORDER**

**I.   INTRODUCTION**

These matters are before the Court for Sentencing. Prior to the date for sentencing, the Court wishes to address whether the "mass marketing" two point enhancement under U.S.S.G. 2B1.1(B)(2)(A) applies. The Court concludes that it does, and that it applies to both Defendant Madison and Defendant Zein.

**II.   BACKGROUND**

Defendant Hassan Zein was charged in a one-count Information with Conspiracy

to Commit Wire Fraud, in violation of 18 U.S.C. § 1349.  On July 1, 2009, Zein pled guilty to the charge.  Defendant Nathan Madison was charged in a one-count Information with Wire Fraud, in violation of 18 U.S.C. § 1343.   Madison pled on May 18, 2009.  Both pled pursuant to  Rule 11 Plea Agreements.

Zein and Madison conspired to obtain a fraudulent mortgage loan on a home located at 11785 Hartel, Livonia, Michigan.  Madison used www.craigslist.com to recruit a third party to act as a straw buyer for the scheme.  Zein and Madison prepared a fraudulent loan application and submitted it with related documents to Wells Fargo Home Mortgage; the loan package was later approved.  When the original straw buyer did not show up, Zein and Madison arranged and paid for another individual to pose as the straw buyer at the closing.  On October 24, 2009, Wells Fargo, an FDIC insured institution, disbursed the loan funds.

**III.   ADVISORY GUIDELINES**

**A.   Zein's Rule 11 Plea Agreement and Probation Department Calculations**

In Zein's Rule 11 Plea Agreement, the base offense level was calculated at 7, with a 12-level increase under U.S.S.G. § 2B1.1(b)(1)(D) for a loss between $200,000 and $400,000, a 2-level increase for obstruction of justice, and a 3-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility.  The adjusted offense level is 18.  With no criminal history points and a Criminal History Category I, the guideline range is 27 to 33 months.

The probation department calculations in the PSIR are the same as those calculated in the Rule 11.

**B.     Madison's Rule 11 Plea Agreement and Probation Department Calculations**

There is an unresolved objection concerning the amount of loss Madison is responsible for.  Otherwise, both the Rule 11 Plea Agreement and Probation agree that Madison's base offense level is 7 and he will receive a two level reduction for acceptance of responsibility.

**C.     Court's Calculation**

Neither the Rule 11 Agreements, nor the probation department applied the 2-level enhancement at U.S.S.G. § 2B1.1(b)(2)(A)(ii) for an offense committed through mass-marketing for either Defendant.  At the original sentencing hearings, the Court advised the parties that it intended to apply the enhancement.  The Court gave the parties an opportunity to submit additional briefing; both Defendants argue the enhancement is not applicable.

The commentary to the guideline explains that "mass-marketing" includes "a plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to . . . purchase goods or services."§ 2B1.1 cmt. n.4(A).

Zein claims the Craigslist ad was not mass marketing because it was (1) placed on only one website, (2) sublisted under only one city, and (3) then sublisted under one particular category.  Additionally, he contends that Craigslist is best compared to newspaper classified ads and that he could not have intended to reach a "mass" of people with his ad.

Madison argues there is not enough information to determine that the

enhancement applies by the preponderance of the evidence standard. Madison says it is not enough that victim Derrick Lin responded to a posting; instead, the posting must be viewed to determine whether it meets the definition of "mass marketing." Madison also argues that the enhancement seems designed to address behaviors which actively solicit victims, *i.e.*, spam e-mails. He says Craigslist is more akin to a bulletin board, which may or may not reach a large number of people depending on the specifics of the posting.

All of these arguments are unavailing. Importantly, in his Rule 11 Plea Agreement, Madison admits that he and Zein used the Craigslist website to recruit a third party to act as a straw buyer to purchase a home using a fraudulent loan application and documents. When Lin, the original straw buyer, did not show for the closing, Madison and Zein recruited and paid another person to pose as Lin at the closing. This certainly qualifies as a plan to solicit by the internet.

The Fifth Circuit applied the enhancement where a defendant placed ads in grocery store tabloid newspapers; one such paper had an average circulation of 335,900 every six days. See *U.S.A. v. Magnuson*, 307 F.3d 333 (2002).

Review of the Craigslist website and its statistical information shows it has a much wider audience. The Craigslist factsheet indicates that it is "[l]ocal classified and forums - community moderated, and largely free." It also says that Craigslist gets more than 20 billion page views per month; more than 50 million people use it in the United States alone; and it is number 7 worldwide in terms of English-language page views. See http://www.craigslist.org/about/factsheet. According to Alexa, a web information company that collects web traffic statistics, the Detroit Craigslist sub-page ranks 28 out

of 102 tracked pages and gets 1% of Craigslist web traffic. See www.alexa.com/siteinfo/craigslist.org. Based on these numbers, Defendants are hard pressed to claim that use of www.craigslist.org does not qualify as mass marketing.

While Zein admits that other Circuits have applied the enhancement to internet frauds, he argues that the dissent in *U.S. v. Pirello*, 255 F.3d 728 (9th Cir. 2001) should lead this Court to a different conclusion. In *Pirello*, the defendant placed four ads on an internet classified ads website, known as Excite Classifieds. The ads were part of a fraudulent scheme where the defendant induced prospective buyers to send him money for computers he never intended to deliver; three persons responded. The *Pirello* court affirmed the district court's application of the enhancement, finding that the defendant's conduct constituted the use of the internet to induce a large number of people to purchase goods.

The *Pirello* dissent argued that such passive placement of ads did not constitute "solicitation by . . . the Internet." The dissent opined that "solicitation" suggested "some sort of one-on-one importuning." This Court rejects the dissent's analysis, as did the *Pirello* majority and as other Circuits have as well.

In *Magnuson*, *supra*, the defendant placed ads promising interest-free loans. After collecting "application fees" and "deposits" from his victims, the defendant kept the money for his own use and did not extend any loans. Agreeing with the *Pirello* majority, the Fifth Circuit found that the mass marketing enhancement merely required "advertising that reaches a 'large number of persons.'" *Magnuson*, 307 F.3d at 335. The court specifically declined to adopt the restrictive view of the *Pirello* dissent, noting that two mediums listed in the commentary --note-mail and the internet – are passive

5

and often lack "personal entreating." *Id.*

In *U.S. v. Heckel*, 570 F.3d 791 (7th Cir. 2009), the defendant challenged the addition of the enhancement under § 2B1.1(b)(2)(A)(ii).  The defendant used internet auction websites to defraud successful bidders on items he listed for sale.  He argued that the enhancement was improper because only the winning bidder was a victim.  The court rejected the argument, reasoning that the guideline focuses on the method used to increase the number of potential victims, rather than the number of actual victims.  *Heckel*, 570 F.3d at 794.  This Court applies the same reasoning to find the enhancement applicable here; importantly, the language of § 2B1.1(B)(2)(A) itself speaks in terms of actual victims <u>or</u> whether the crime was committed through mass marketing; the section is applicable when only one condition is met.

Zein also argues that the enhancement should only apply to the person who engaged in the mass marketing; he claims that would be Madison.  However, the enhancement has been applied to persons engaged in jointly undertaken criminal activity.

In *U.S. v. Mauskar*, 557 F.3d 219 (5th Cir. 2009), the defendant challenged a § 2B1.1(b)(2)(A)(ii) enhancement in a Medicaid fraud case.  There, the defendant physician compensated "recruiters" to bring patients to his office, where he prescribed medically unnecessary wheelchairs.  He argued that while he might have known about the mass marketing, the record contained no evidence that he participated, encouraged, developed or planned it.  The court rejected his argument, agreeing with the district court that he was "inextricably involved in the mass marketing aspect of the offense" where (1) more than one thousand elderly Medicare beneficiaries were escorted to his

6

medical clinic, and (2) his staff used a separate sign-in sheet for the Medicare wheelchair applicants to reduce arguments about who was entitled to be paid a recruiting fee for having brought in the applicants. *Mauskar*, 557 F.3d at 233.

The court further reasoned that "the plain language of the Guidelines forecloses Mauskar's argument that the mass-marketing enhancement does not apply to his conduct." It noted that the mass-marketing enhancement is applicable if an "offense . . . was committed through mass-marketing." U.S.S.G. § 2B1.1(b)(2)(A)(ii). "'Offense' means the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1 cmt. n.1(H). And "in the case of a jointly undertaken criminal activity," relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

Here, Zein claims that Madison actually placed the ad on Craigslist and that his involvement began only after Madison's marketing brought Lin in the door. However, under the relevant conduct provisions of U.S.S.G. § 1B1.3, Zein is accountable for the conduct of Madison since that conduct was in furtherance of their jointly undertaken conduct.

Moreover, the Government says that Zein was actively involved and recruited Madison to find straw buyers for the scheme. The Government adds that Zein: (1) directly received a monetary benefit from real estate and mortgage broker commissions; (2) controlled the loan proceeds from 15 known property closings; and (3) personally attended several of the closings.

Derrick Lin was victimized as a direct result of the Craigslist ad. Zein falsified the

information on Lin's loan application. Zein also recruited or was involved in the recruitment of another person to impersonate Lin and sign the closing documents after Lin failed to show for the scheduled closing. Under these circumstances, the mass-marketing enhancement applies to Madison and Zein's conduct.

### 1. Zein's Guideline Range

With a base offense level of 7, a 12-level increase under U.S.S.G. § 2B1.1(b)(1)(D) for a loss between $200,000 and $400,000, a 2-level increase under 2B1.1(b)(2)(A)(ii) for use of mass marketing, a 2-level increase for obstruction of justice, and a 3-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility, Zein's adjusted offense level is 20. With no criminal history points and a Criminal History Category I, his guideline range is 33 to 41 months.

### 2. Madison's Guideline Range

Madison's guideline range will be calculated once the amount of loss is determined. Otherwise, he will have a base offense level of 7, a 2-level increase under U.S.S.G. § 2B1.1(b)(2)(A)(ii) for an offense committed through mass-marketing, and a 2-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. With 4 criminal history points, his Criminal History Category is III.

### IV. CONCLUSION

For the reasons stated, the Court finds that the two point "mass marketing" enhancement under U.S.S.G. 2B1.1(B)(2)(A) applies to both Defendants. It will be used by the Court to calculate their applicable guideline ranges. As a result, the guideline ranges for both Defendants will be higher than the agreed upon guideline ranges in their

Rule 11 Plea Agreements. Both Rule 11 Plea Agreements allow the Defendants to withdraw from the agreements and withdraw their guilty pleas, if the Court imposes a sentence higher than the top of the agreed upon guideline range. If the Defendants elect to do so, the Court will allow them to withdraw from their plea agreements and withdraw their guilty pleas.

    **IT IS ORDERED**.

s/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: December 11, 2009

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 11, 2009.

s/Linda Vertriest  
Deputy Clerk